# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## LAFAYETTE-OPELOUSAS DIVISION

| | | |
|---|---|---|
| JAMES C. HOLDEN | * | CIVIL ACTION NO. 05-0123 |
| VERSUS | * | JUDGE DOHERTY |
| COMMISSIONER OF SOCIAL SECURITY | * | MAGISTRATE JUDGE HILL |

## REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993. James C. Holden, born October 23, 1968, filed applications for disability insurance benefits supplemental security income payments on November 6, 2002, alleging disability as of May 31, 2002, due to back and hip pain.[1]

## FINDINGS AND CONCLUSIONS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is substantial evidence in the record to support the Commissioner's decision of non-disability and that the Commissioner's decision comports with all relevant legal standards. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

---

[1]Claimant filed a previous application on July 20, 1998, which was denied initially with no further review.

In fulfillment of F.R.Civ.P. 52, I find that the Commissioner's findings and conclusions are supported by substantial evidence, which can be outlined as follows:[2]

**(1) Records from Bunkie General Hospital dated November 4, 2002 to December 23, 2002**. Claimant was seen for low back pain with burning and radiation down his left lateral thigh, and hip pain. (Tr. 155, 162-63). He had tender left lumbar muscles on examination. (Tr. 164). The assessment was low back pain, for which he was prescribed medications. (Tr. 157-58, 165).

**(2) Records from Savoy Medical Center dated December 25, 2002**. Claimant was seen after he twisted his back while coming down the steps. (Tr. 167). The assessment was chronic low back pain. (Tr. 168). He was prescribed Vioxx and Robaxin. (Tr. 169).

**(3) Consultative Orthopedic Examination by Dr. Robert Po dated March 25, 2003**. Claimant complained of having back pain since a 1999 work-related injury in which he sustained a hairline fracture in the sacrum and anterior pelvis. (Tr. 170). At the time of Dr. Po's examination, claimant reported back pain with numbness in both legs, particularly on the left. He did not drive, and had trouble putting on his pants. He could feed himself. He was taking Lortab and Soma.

---

[2]Although all of the medical records were reviewed by the undersigned, only those relating to the current applications are summarized herein.

On examination, claimant was 5 feet 11 inches tall, and weighed 181 pounds. He reported his pain as being 10 on a scale of 0-10. He had slight limited motion of his neck, with no pain or spasm. (Tr. 171). His left shoulder was a little tight on abduction and forward extension, with swelling of the AC joint. He had normal strength and normal motion of the elbows, wrists, fingers, and thumbs.

Claimant had decreased sensation of the left upper arm from the shoulder to the elbow, and also in the left little finger, index finger, and thumb. His left upper arm was 1.5 cm. smaller than the right, and his right forearm was 0.5 cm. smaller than the left.

On spine and lower extremities examination, claimant had decreased motion, extension and flexion on lateral bending. He had tightness on the left side of the lumbar area. His hips revealed slight rotation changes with back pain noted.

Claimant had normal strength in his hips and knees. He had full range of motion of the knees and ankles. The right thigh was 2 cm. smaller than the left. He had a prominence in the top of the left foot.

Additionally, claimant had decreased sensation of the left leg from the hip to the knee, knee to the ankle, and top of the foot and sole. He also had decreased vibration on the left side, weakness on the left side on tiptoe and heel walking, and limping on the left side. He arose with some difficulty from a seated to standing

position.

X-rays showed arthritic changes at the L5-S1 facet. Claimant had irregularity of the right sacroiliac superiorly. He had a mal-union of fracture of the right pubic ischium and pubic ramus. The hips had slight narrowing on both sides, with no evidence of arthritis or cystic changes. He also had slight narrowing of the disc space at L5-S1. The sacrum also appeared irregular at S3-4.

Dr. Po's impression was DDD L5-S1 with a mal-union fracture of the anterior pelvis on the right side, and left sacroiliac with left leg radiculitis. Claimant's prognosis was guarded. Dr. Po opined that claimant could occasionally lift 25 pounds and frequently lift 10 pounds. He determined that in an 8-hour period, claimant could sit a total of 6 hours and continuously for 1 hour, and stand/walk a total of 4 hours and continuously for 15 minutes. (Tr. 171-72). He stated that claimant should avoid kneeling, squatting, climbing, use of foot controls, heights, and areas requiring balance and exposure to vibration. (Tr. 172).

**(4) Residual Functional Capacity ("RFC") Assessment – Physical dated April 3, 2003**. The state agency medical consultant determined that claimant could lift/carry 20 pounds occasionally and 10 pounds frequently; stand/walk and sit about 6 hours in an 8-hour workday, and had unlimited push/pull ability. (Tr. 176). He could occasionally perform all postural activities. (Tr. 177). The examiner noted that

there was not a lot of medical evidence to substantiate claimant's complaints. (Tr. 180).

**(5) Psychological Evaluation by Dr. Alfred Buxton dated April 14, 2003**. At the time of the evaluation, claimant was on no mental health treatment or prescriptive medications. (Tr. 184). Verbal receptive and expressive language skills were good. Recent and remote memories were intact. His ability to attend and concentrate was good. His cognitions were simple and concrete, but logical. His mood was even, and he was alert and responsive.

Administration of the Wechsler Adult Intelligence Scale – III yielded a full scale IQ score of 69, verbal score of 72, and performance score of 72. Dr. Buxton opined that claimant functioned within the borderline range of general intelligence. Claimant's adaptive daily living skill development was within a commensurate functional range.

Dr. Buxton concluded that claimant was an elementary school dropout who was functionally illiterate. He determined that claimant was of borderline subaverage general intellect with commensurate adaptive daily living skill development. Despite his illiteracy, claimant was regarded as being at least marginally competent as a manager of his own personal affairs. He had no evidence of any psychiatric overlay.

Claimant presented with chronic pain, with degree of impairment mild and prognosis fair. (Tr. 185). His Global Assessment of Functioning score was 70 over the previous 12 months. Dr. Buxton opined that claimant would not be precluded from securing and maintaining gainful, competitive employment within the community commensurate with his functional abilities. He noted that there might be some parametric restrictions secondary to his illiteracy and his report of mild chronic pain.

**(6) Psychiatric Review Technique ("PRT") Form dated April 30, 2003**. Joseph K. Kahler, Ph.D., assessed claimant for borderline intellectual functioning. (Tr. 187). He determined that claimant had mild restriction of activities of daily living and difficulties in maintaining social functioning. (Tr. 197). He found that claimant had moderate difficulties in maintaining concentration, persistence or pace. Claimant had no episodes of decompensation.

**(7) RFC Assessment – Mental dated April 30, 2003**. Dr. Kahler found that claimant was moderately limited as to his ability to understand, remember, and carry out detailed instructions; maintain attention and concentrate for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; interact appropriately with the general public; travel in unfamiliar places or use public transportation, and set realistic goals or make plans

independently of others. (Tr. 200-01). Claimant was not significantly limited in any other area.

**(8) Claimant's Administrative Hearing Testimony**. At the hearing on April 26, 2004, claimant was 35 years old. (Tr. 236). He testified that he was 5 feet 11 inches tall, and his weight varied between 160 to 175 pounds. He stated that he lived with his wife and two children, who were 17 months old and 6 weeks old. (Tr. 237).

Claimant testified that he did not have a driver's license. He had attended school through the third or fifth grade in special education. (Tr. 238, 253). He said that he could not read or write, but could do some math. (Tr. 238).

Regarding employment, claimant had worked on offshore rigs as a floor hand. (Tr. 239). He had also operated a weed eater for the City of Mamou. Additionally, he had worked as a deck hand and "clean up guy." (Tr. 240).

As to complaints, claimant testified that he had stopped working because he could not stand for long periods of time. He stated that he had been injured at work in 1999, and had tried to work afterwards. (Tr. 241). He reported that he could no longer work because he had a hairline crack in his pelvis and L4 and L5 discs. He complained of pain in his lower back and a knot in his hip. (Tr. 242).

Additionally, claimant stated that he had diarrhea three to five times a week. (Tr. 251). He also reported that crowds made him nervous. (Tr. 254).

Regarding activities, claimant reported that his left leg went "dead" after he stood for long periods, which caused him to fall three to five times a week. (Tr. 242, 253). He stated that he could stand for about two hours at a time. He testified that he could sit, but that it started bothering him after a while. He said that he could comfortably lift his son, who weighed about 25 pounds. (Tr. 243).

Claimant testified that he smoked about a pack of cigarettes a week. (Tr. 244). He stated that he had cut down from a pack a day after having a heart attack the previous year. He reported that he was not on any medication or going to a mental health clinic. (Tr. 245, 249).

As to activities, claimant reported that he watched his children and helped around the house. (Tr. 245). He stated that he washed dishes and put up the groceries, but could not carry them. He testified that he walked around the yard and occasionally went fishing with his brother. (Tr. 246). He said that he spent most of the day watching television and lying down on the couch. (Tr. 250).

**(9) Administrative Hearing Testimony of Richard Galloway, Vocational Expert** ("VE"). Mr. Galloway classified claimant's past work as a floor hand as heavy and semi-skilled; a deck hand as heavy and semiskilled, and a security guard as light and semi-skilled. (Tr. 255-56). The ALJ posed a hypothetical in which he asked the VE to assume a claimant of the same age, education, and work experience;

who could lift and carry 20 pounds occasionally and 10 pounds frequently; who could

stand and walk for about 4 hours in an 8-hour workday, and do that for a quarter of

an hour continuously; could sit for six hours, one hour continuously, and could not

do complex work. (Tr. 256). In response, Mr. Galloway testified that there would not

be sufficient jobs under that hypothetical for sedentary work. When the ALJ changed

the hypothetical to sedentary and light work, the VE identified the jobs of assembler,

of which there were 5654 available statewide, and 176,090 sedentary and 813,675

light jobs nationally, and grader, except agricultural products, of which there were

165 sedentary and 948 jobs statewide, and 4479 sedentary and 49,910 light jobs

nationally. (Tr. 256-57).

When the ALJ changed the hypothetical to include episodes where claimant's

leg would go dead and remain numb four or five times a month where claimant could

not go to work, the VE testified that there would be no jobs available. (Tr. 258-59).

**(10) The ALJ's Findings are Entitled to Deference**. Claimant argues: (1)

the ALJ's findings are not supported by substantial evidence, and (2) the ALJ's failed

to assess claimant's credibility.

As to the first argument, claimant argues that the ALJ "completely ignored the

medical and lay evidence" regarding his disability. (rec. doc. 11, p. 7). The record

reflects, however, that the ALJ considered all of the medical records concerning his

physical and mental complaints, but found that his conditions were not severe enough to be disabling. (Tr. 16). As to claimant's mental condition, the ALJ determined that despite his borderline intellectual functioning, claimant was able to attend and concentrate sufficiently to provide coherent testimony at the hearing, and was able to watch his children, wash dishes, walk in his yard, and occasionally fish with his brother. These findings are supported the report of Dr. Kahler, who found that claimant had mild restriction of activities of daily living and difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation. (Tr. 197). Additionally, Dr. Buxton opined that claimant would not be precluded form securing and maintaining gainful, competitive employment within the community commensurate with his functional abilities. (Tr. 185). As the ALJ's findings regarding claimant's mental condition are supported by the evidence, they are entitled to deference.

Regarding claimant's physical limitations, claimant alleged that he was unable to work due to pain in his lower back and hip, and occasional numbness in his left leg. (Tr. 17, 242, 253). In evaluating these complaints, the ALJ gave "significant weight" to the opinion of the examining orthopedist, Dr. Po. (Tr. 18). Dr. Po opined that claimant could occasionally lift 25 pounds and frequently lift 10 pounds; could sit a total of 6 hours and continuously for 1 hour in an 8-hour period; stand/walk a

total of 4 hours and continuously for 15 minutes in an 8-hour period, and should avoid kneeling, squatting, climbing, use of foot controls, heights, and areas requiring balance and exposure to vibration. (Tr. 171-72). Generally, a specialist's opinion is to be accorded greater weight than a non-specialist's opinion. *Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994); *Dorsey v. Heckler*, 702 F.2d 597, 603 (5th Cir. 1983). Because the ALJ's opinion as to claimant's physical condition is supported by that of an examining specialist, his findings are entitled to deference.

Next, claimant argues that the ALJ "did not specifically deal with the issue of credibility." (rec. doc. 11, p. 8). However, the record reflects that the ALJ did consider claimant's subjective complaints in assessing his credibility. (Tr. 19). In considering claimant's alleged pain, the ALJ noted that claimant had required no ongoing treatment for pain and was taking no prescription medication. The ALJ is not precluded from relying upon the lack of treatment as an indication of nondisability. *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990); C*hester v. Callahan*, 193 F.3d 10, 12 (1st Cir. 1999) (gaps in the medical record regarding treatment can constitute "evidence" for purposes of the disability determination); *McGuire v. Commissioner of Social Security*, 178 F.3d 1295 (6th Cir. 1999) (gaps in treatment may reasonably be viewed as inconsistent with a claim of debilitating symptoms); *Franklin v. Sullivan*, 1993 WL 133774 (E.D. La. 1993); *Ostronski v.*

*Chater*, 94 F.3d 413, 419 (8th Cir. 1996) (reliance on aspirin does not suggest a disabling condition); *Haynes v. Shalala*, 26 F.3d 812, 814 (8th Cir. 1994) (lack of strong medication is inconsistent with subjective complaints of disability); *Rautio v. Bowen*, 862 F.2d 176, 179 (8th Cir. 1988) (failure to seek aggressive treatment and limited use of prescription medications is not suggestive of disabling condition).

Additionally, the ALJ observed that evidence existed that claimant was able to perform some work activity based on his daily activities. (Tr. 19). He observed that claimant cared for his infant and toddler, washed dishes, fished with his brother and walked outside. It is appropriate to consider the claimant's daily activities when deciding the claimant's disability status. *Leggett v. Chater*, 67 F.3d 558, 565 (5th Cir. 1995). Thus, the ALJ's assessment as to claimant's credibility is entitled to great deference. *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000).

Based on the foregoing, it is my recommendation that the Commissioner's decision be **AFFIRMED** and that this action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of

any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN TEN (10) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.  *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, 79 F.3D 1415 (5TH CIR. 1996).**

Signed this 10th day of February, 2006, at Lafayette, Louisiana.

C. Michael Hill
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE